1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA

9

10

11

12

13

| | | |
|---|---|---|
| ERIC WICKLIFFE, | ) | |
| Petitioner, | ) | CASE NO.    2:09-cv-01666 BJR |
| | ) | |
| v. | ) | |
| | ) | ORDER DENYING PETITION FOR |
| | ) | WRIT OF HABEAS CORPUS |
| D.K. SISTO, | ) | |
| Respondent. | | |

_____

14

15

## I.    INTRODUCTION

16

Petitioner is a California state prisoner proceeding pro se with a petition for writ of

17

habeas corpus under 28 U.S.C. § 2254. Petitioner is serving a sentence of fifteen-years-to-life

18

imprisonment in the California Department of Corrections imposed following his 1990

19

20

conviction for second-degree murder. Petitioner challenges the Board of Parole Hearing's (the

"Board") February 1, 2008 decision finding him unsuitable for parole.

21

22

## II.    FACTURAL BACKGROUND AND PROCEDURAL HISTORY

23

On October 22, 1990, Petitioner pled guilty to murdering Karen Marie Harnage. At the

24

time of the murder, Ms. Harnage was Petitioner's estranged girlfriend and the mother of his son.

25

Petitioner and Ms. Harnage had recently separated and Ms. Harnage had a restraining order

against Petitioner. Despite the restraining order, on the day of the murder, Ms. Harnage drove to

1

1
2
3
4
5
6
7
8
9
10

Petitioner's parent's home in order to discuss the status of her relationship with him. An argument ensued and Ms. Harnage left the house and got into her car. Petitioner followed her to her vehicle, and the argument continued in the driveway until Petitioner shot her with his 38-caliber handgun, killing her. Petitioner's version of the shooting has varied significantly throughout this case, but the autopsy report shows that Ms. Harnage was shot three times. One shot was in the palm of her hand, the second shot was in her leg at an angle that indicates that she was sitting when the bullet entered her leg, and the final and fatal shot was in her back.[1] (Dkt. No. 1, Ex. A at 59.) Petitioner fled the scene of the shooting and drove to his uncle's house. His uncle transported him back to the crime scene and Petitioner surrendered to the local authorities.

11
12
13
14
15
16
17
18
19
20
21

After being sentenced, it was determined that Petitioner's Minimum Eligible Release Date was February 17, 2000. He was denied parole for the first time in 2004. On February 1, 2008, Petitioner appeared before the Board for his second suitability hearing and was denied parole for one year. Petitioner filed a habeas petition in Los Angeles Superior Court, which was denied on February 4, 2009. The California Court of Appeal, Second District, denied the petition on March 26, 2009 and, thereafter, the California Supreme Court denied the petition. Petitioner filed the present habeas petition in the Eastern District of California on June 16, 2009. The matter was transferred to this court on March 2, 2010. The matter is now ripe for review.

22
23
24
25

---

[1] Petitioner has told the following versions of the shooting, all of which place at least some blame on the victim: (1) Ms. Harnage pushed him to the ground, the handgun fell out of his waistband, and the gun fired when they were struggling over it; (2) Ms. Harnage jumped on his back and the gun went off accidently; (3) Ms. Harnage grabbed the gun from his waistband and the gun fired when they were struggling over it. (Dkt. No. 1, Ex. A at 42-44, 58-59.) However, Petitioner has also stated: "I didn't want to do it, I just wanted to scare her. I shot one time to scare her, then she bent towards the front [of the car], that's when I closed my eyes and kept firing into the car." *Id*. at 43. And, at his 2008 parole hearing Petitioner stated: " She did lash out at me with harsh words, she did push me, jump on my back, was hitting me. The gun did fall out, but I was so angry and frustrated about so many things that was going on in our life. So the gun did fall, I picked the gun up and I turned around and I started shooting it. That's exactly what happened." *Id*. at 45.

## III.    DECISION

*A.    Standard of Review*

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this petition because it was filed after the enactment of AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Because Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment, 28 U.S.C. § 2254 provides the exclusive vehicle for his habeas petition. *See White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004) Under AEDPA, a habeas petition may not be granted with respect to any claim adjudicated on the merits in state court unless petitioner demonstrates that the highest state court decision rejecting his petition was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented. . . ." 28 U.S.C. § 2254(d)(1) and (2).

As a threshold matter, this court must ascertain whether relevant federal law was "clearly established" at the time of the state court's decision. To make this determination, the court may only consider the holdings, as opposed to *dicta*, of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000). In this context, Ninth Circuit precedent remains persuasive but not binding authority. *See id.* at 412-13; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

The court must then determine whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the

1
2
3
4
5
6
7
8
9
10
11
12

Supreme] Court on a question of law or if the state court decides a case differently than [the]

Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the

state court identifies the correct governing legal principle from [the] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. At all

times, a federal habeas court must keep in mind that it "may not issue the writ simply because

[it] concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly. Rather that application must also be

[objectively] unreasonable." *Id*. at 411. It is the petitioner's burden to establish that the state

court decision was contrary to, or involved an unreasonable application of, clearly established

federal law. *See* 28 U.S.C. § 2254; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

13
14
15
16
17
18
19
20
21
22
23

　　　　AEDPA also requires federal courts to give considerable deference to state court

decisions, and state courts' factual findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1).

Federal courts are bound by a state's interpretation of its own laws. *See Murtishaw v.*

*Woodford*, 255 F.3d 926, 964 (9th Cir. 2001) (*citing Powell v. Ducharme*, 998 F.2d 710, 713

(9th Cir. 1993)). This deference, however, is accorded only to "reasoned decisions" by the

state courts. To determine whether the petitioner has met this burden, a federal habeas court

looks to the last reasoned state court decision because subsequent unexplained orders

upholding that judgment are presumed to rest upon the same ground. *See Ylst v. Nunnemaker*,

501 U.S. 797, 803-04 (1991); Medley v. Runnels, 506 F.3d 857, 862 (9th Cir. 2007).

*B.*　　　*Due Process Right under California's Parole Scheme*

24
25

　　　　Under the Fifth and Fourteenth Amendments to the U.S. Constitution, the federal and

state governments are prohibited from depriving an inmate of life, liberty or property without

the due process of law. U.S. Const. amends. V, XIV. A prisoner's due process claim must be

analyzed in two steps: the first asks whether the state has interfered with a constitutionally

protected liberty or property interest of the prisoner, and the second asks whether the

procedures accompanying that interference were constitutionally sufficient. *Ky. Dep't of*

*Corrections. v. Thompson*, 490 U.S. 454, 460 (1989).

Accordingly, our first inquiry is whether Petitioner has a constitutionally protected

liberty interest in parole. The U.S. Supreme Court articulated the governing rule in this area

in *Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1 (1979), and *Board of Pardons v. Allen*,

482 U.S. 369 (1987). *See McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (applying

"the 'clearly established' framework of *Greenholtz* and *Allen*" to California's parole scheme).

The Court in *Greenholtz* determined that although there is no constitutional right to be

conditionally released on parole, if a state's statutory scheme employs mandatory language

that creates a presumption that parole release will be granted if certain designated findings are

made, the statute gives rise to a constitutional liberty interest. *See Greenholtz*, 442 U.S. at 7,

12; *Allen*, 482 U.S. at 377-78.

The California statutes and regulations at issue in this case contain mandatory language

providing that a prisoner serving an indeterminate life sentence has an expectation of parole

unless, in the judgment of the parole authority, he "will pose an unreasonable risk of danger to

society if released from prison." 15 CCR § 2402(a). Specifically, California Penal Code §

3041(b) provides that the Board "shall set a release date unless it determines . . . that

consideration of the public safety requires a more lengthy period of incarceration for this

individual. . . ." Cal. Penal Code § 3041(b) (emphasis added). The California Supreme Court has

interpreted this language to provide that an adverse parole decision must be supported by "some

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

evidence" demonstrating current dangerousness. *See In re Lawrence*, 44 Cal.4th 1181, 1204

(2008); *In re Shaputis*, 44 Cal.4th 1241, 1254 (2008). Thus, the California Supreme Court has

held that as a matter of state constitutional law, this mandatory language in California's parole

scheme creates a liberty interest in parole. *See Lawrence*, 44 Cal.4th at 1204; *Shaputis*, 44

Cal.4th at 1254, 1258.

Next, this court must determine whether the procedures accompanying the state's

interference with Petitioner's liberty interest in parole were constitutionally sufficient.

*Thompson*, 490 U.S.at 460. The Ninth Circuit recently considered this question in *Hayward v.*

*Marshall*, and concluded that the appropriate inquiry for a federal habeas court is whether "some

evidence" of current dangerousness supported the Board or Governor's denial of parole.

*Hayward*, 603 F.3d at 563. In other words, the Board may decline to set a parole date only upon

a finding that Petitioner's release would present an unreasonable current risk of danger to society

if he is released from prison. Therefore, this court must deny relief if there is "some evidence" in

the record to support the parole authority's finding of current dangerousness. *Id*. That is the

determinative issue in this case.

*C.       The Board's 2008 Decision*

On February 1, 2008, the Board rendered the following decision in denying Petitioner

parole, in relevant part:

> This was a senseless, horrible crime that stemmed from a tumultuous
> relationship between [Petitioner] and the victim. The relationship was
> tainted with domestic violence, and in review of the record, [Petitioner]
> has told many different stories about how this crime occurred. He does
> admit that he shot the victim, but seemingly continues to minimize his
> responsibility, telling a multitude of different versions of this crime. I
> do believe that, at today's hearing, that you're moving forward
> from there in the discussion that we have had with you. Those other
> stories did, to some extent, put the blame on the victim to some degree.
> …In reviewing the totality of the record, it is the Panel's opinion that

6

> [Petitioner] needs to continue to explore some insight into his
> behaviour that caused him to let anger, frustration and jealousy
> cause him to, in the past, hit, shoot, and eventually shoot and kill
> a woman that he professed to love….[Petitioner] needs to…make
> a decision not to minimize this crime as it relates to how it
> happened, why it happened, and tell exactly the way it happened.
> This Panel is not convinced that he has yet to understand all the
> triggers that led him to escalate this to a level, viciously shooting
> this woman. And we're not convinced that it couldn't happen again.
> Therefore, …he is viewed as a continued threat to public safety in
> the free community, and some incarceration time is still needed.

(Dkt. No. 1, Exhibit A at 79-80.)

The "paramount consideration for...the Board...under the governing statutes is whether the inmate currently poses a threat to public safety." *In re Lawrence*, 44 Cal. 4th at 1210. In this case, the Board believes that Petitioner still poses a threat to society because he continues to minimize his role in Ms. Harnage's murder. Petitioner has given many versions of the events leading up to her murder, frequently placing the blame on her. For example, Petitioner stated in his most recent psychological evaluation that she pushed him, causing the gun to go off accidently. (Dkt. No. 1, Ex. A at 43.) However, at the parole hearing, Petitioner claimed that Ms. Harnage jumped on his back, causing the gun to fall to the ground, and he picked it up and shot her three times. *Id.* at 45. Where guilt is uncontested, an inmate's version of the events may be some evidence that he has not gained sufficient insight into the nature and magnitude of the commitment offense. *See In re McClendon*, 113 Cal. App. 4th 315, 323 (2004); *In re Shaputis*, 44 Cal. 4th 1241, 1255 (2008) (stating that an inmate's lack of remorse or insight into the nature and magnitude of the offense may be some evidence of current dangerousness). In this case, there is some evidence to support the Board's conclusion that Petitioner must demonstrate that he has accepted responsibility for his actions and gain greater insight into his behaviour, before he will be suitable for parole. As such, this court finds that the California judicial decisions approving

7

1

2

3

the Board's 2008 determination were not an "unreasonable application" of the California "some evidence" requirement, nor based on an "unreasonable determination of the facts in light of the evidence." U.S.C. § 2254(d)(1) and (2). Accordingly, there is no basis for federal habeas relief.

4

### IV. CONCLUSION

5

6

Based on the foregoing, the Writ for Petition of Federal Habeas Corpus is DENIED.

DATED this 30th day of August, 2010.

7

8

9

/s/ Barbara Jacobs Rothstein

10

11

Barbara Jacobs Rothstein
U.S. District Court Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25